## CITY OF PORTLAND *vs.* PORTLAND WATER COMPANY.

### Cumberland.          Decided August 15, 1877.

*Tax.*

It is within the constitutional authority of the legislature, to empower the city council of the city of Portland, to exempt from taxation for a term of years property belonging to the Portland Water Company, in consideration of an undertaking and agreement by the company to furnish, free of cost to the city, a supply of water for its public and municipal purposes.

Under an act of the legislature, authorizing an exemption for six years, a vote of the city council to exempt for five years, is valid.

The term of exemption does not necessarily commence running from the passage of the act by the legislature, but may begin when the exemption is voted by the city council, if the vote is passed within a reasonable time afterwards.

The legislative act allowed the exemption to extend to property of the company not in existence when the act was passed. *Held,* that this would include, as taxable, all real estate at a value according with the condition it was then in, and would exclude all personal property acquired after that time.

ON FACTS AGREED.

DEBT, brought under the provisions of chapter 232, of the public laws of 1874, to recover a tax claimed to be due and unpaid.

The amount of the tax assessed is $875, on real estate and $1,625 on personal estate ; total, $2,500.

No question is made as to the legality of the tax otherwise than is indicated in the facts following :

The Portland Water Company's charter was amended by the legislature of the state of Maine by chapter 364 of the special acts of 1867. The contract of March third, 1868, called an ordinance to authorize the Portland Water Company to supply the city of Portland with pure water, may be referred to and made part of the case. July 28, 1870, an order was duly passed by the city council of the city of Portland, of which the following is a copy: "Ordered that the property of the Portland Water Company in this city be exempted from taxation for five years." The tax in question was assessed April, 1874. Under this order and the provisions of its charter, and the additional acts and contract above referred to, the Portland Water Company claim to be exempt from the tax assessed.

*T. B. Reed*, city solicitor, for the plaintiffs.

*A. A. Strout & G. F. Holmes*, for the defendants.

PETERS, J. The defendants' charter, as amended in 1867, contained this provision : "The city council of the city of Portland may, by vote, exempt any property of said corporation, not now in existence, from taxation for the term of six years." In 1870, the city council passed an order, "that the property of the Portland Water Company be exempted from taxation for five years." This suit seeks to recover a tax assessed upon the property of the company in 1874.

It is contended, by plaintiffs, that the legislature had no constitutional right to pass such an enactment. The objection is, that it is partial legislation, and in conflict with section 8 of article 9 of the constitution, which provides that "all taxes upon real estate, assessed by authority of this state, shall be apportioned and assessed equally, according to the just value thereof." The case of *Brewer Brick Co.* v. *Brewer*, 62 Maine, 62, is relied on to support this proposition.

We do not think the authority of that case reaches the question presented here. There, no question of a charter from or a contract with the state was considered. It was not pretended that any legal consideration moved from the Brewer Brick Company to either the town or state. Here, the action of the legislature, with the vote of the city in pursuance of it, partakes the character of a contract with the defendant corporation. The consideration for a contract upon the part of the city is palpable. The defendants are obliged to furnish, without any expense to the city, all the water for its public buildings and school-houses, and for the extinguishment of fires, that may be needed therefor ; and the defendants are also under other considerable obligations to the city and state. Another distinction between this case and the case cited is, that water works corporations cannot be rivals of each other in any sense. Manufacturing corporations of all kinds may be.

The view taken by the plaintiffs is, we think, an imperfect interpretation of the constitutional clause quoted. The requirement is,

not that all real estate shall be assessed, but that whatever is assessed shall be apportioned and assessed equally. The plaintiffs argue that a law which exempts water works in Portland from taxation, operates unequally, if it does not at the same time exempt all water works in the state from taxation. But all such works are not alike situated in respect to the benefits created by them. One set may be of vastly more consequence to the state than another. The state, through the general benefits to the public, may receive a sufficient compensation for the remission of taxes to one corporation and not to another. This state never has assessed all the real estate within its borders. We do not tax the forts and arsenals of the United States; nor the property of the state itself; nor lands, situated within this state, belonging to Massachusetts; and there are considerations justifying and requiring such exemptions. We are not satisfied that the legislature cannot, by charter or contract, in any case and under any circumstances, for sufficient considerations, release one corporation from taxation, merely because it does not include in its exclusion from taxation all similar corporations in the state.

The property of the defendants has been appropriated and devoted to a public use, and may be exempted from taxation for the same reason that town-houses and school-houses and railroad tracks are exempted. It was only because their works were public works, that they could be permitted to take land for their purposes, under the exer cise of the right of eminent domain. True, the title of the property is vested in the corporation. But the corporation holds it, to some extent, as a trustee for the public. It must be used for the public, and, in a great measure, its use may be controlled by the public. *Worcester* v. *Western Railroad*, 4 Met. 564. *Wayland* v. *Co. Com. of Middlesex*, 4 Gray, 500. *Worcester County* v. *City of Worcester*, 116 Mass. 193. See 60 Maine, 196.

If the legislature possessed the power to grant immunity from taxation to the defendants, could that power be delegated by the legislature to the city government of Portland?

In our opinion, this case falls within the limit where the doctrine of delegated powers becomes questionable. The inhabitants

and property holders of Portland were the persons chiefly interested in the introduction of water into the city. By the company's charter, the city council was to have an extensive supervisory direction over the construction and management of the works, and the city can at any time become the sole owner thereof at a price to be fixed by commissioners appointed by court. If Portland became the owner, there would be no pretense that the works would then be taxable. See citations, *supra.* The state and county taxes are not affected by this arrangement. The valuation upon which they are assessed remains the same. The other property of Portland bears the burden that the defendants' property is relieved of. The power assigned to the city by the state, relates to its local and internal affairs. It merely extended the authority of the city in a matter pertaining to police regulation, enabling the city to obtain a supply of water for its inhabitants. The legislation differs little if any in principle from that contained in the statutory provision (R. S. c. 18 § 56) which allows a town, at its annual meeting, to authorize its assessors to abate something from the taxes of a person who uses on the town roads cart wheels of a particular width, and directs an abatement from the taxes of an inhabitant who keeps a watering-trough on the highway for public convenience. *Wadleigh* v. *Gilman,* 12 Maine, 403. *Stone* v. *Charlestown,* 114 Mass. 214.

It is questioned, whether, under the right to exempt for "six" years, an exemption for but "five" years be valid. The power to do the one includes the other. The legislature did not submit an act to be wholly accepted or rejected by the city, but a discretionary power was conferred upon its council, to be exercised at pleasure.

The date of the act allowing the city council to vote the exemption was Feb. 26, 1867. The plaintiffs contend that the period of six years must commence then, and that the time during which the exemption would run expired in 1873, before the tax in question was assessed. The statute does not declare when the time of exemption may begin. It is clear, however, that it cannot be at the exact date of the passage of the act itself. It must be at some time afterwards. The city council must first have time to consider

and decide the matter.  The exemption is to apply to property "not in existence" at the date of the act.  The exemption could not be of much value until property was acquired.  No doubt the exemption must be voted, if at all, within a reasonable time. What would be a reasonable time is a question of law.  It appears that the contract between the defendants and the city, providing the manner in which the work was to be done, was not entered into until March 3, 1868; and that, on February 14, 1868, an act was passed by the legislature, allowing two years therefrom for the defendants to complete their works.  This creates a probability that the defendants had no valuable property to be assessed, prior to 1869 or 1870, and that the action of the city government was influenced by and based upon that fact.  The delay in voting the exemption was not unreasonable.

A question is discussed, as to the extent of the property that is to receive the immunity from taxation.  The exemption is not to operate upon all the property of the corporation, but only upon such as was not "in existence" on Februrary 26, 1867.  The idea, evidently, was that their property should be taxed irrespective of any increased value thereof caused by themselves.  Such increased value was not property in existence, in the sense of the statute, when the act was passed.  In this view, the real estate was taxable in 1874, at what it would have been then worth, provided no additions or improvements had been placed thereon by the defendants, enhancing its value.  It is immaterial whether the defendants owned the real estate in 1867 or not.  It was in existence, whoever owned it.

As to the personal property, anything held by the defendants in 1874, acquired by them since Feb. 26, 1867, we think, should be considered as newly created property, and not taxable, although more or less of the same may have in fact existed in other forms and conditions before 1867.  It would be difficult and impracticable to apply any different rule.

As the defendants were taxable in 1874 for some property, perhaps, in strictness, the remedy would have been by an appeal to the county commissioners on account of an overvaluation.  But as the briefs of counsel indicate a desire to waive technicalities,

and obtain in this suit a construction of the statute which should govern the rights of the parties, the entry is to be:

Defendants defaulted; damages to be assessed, at *nisi prius,* upon the principles established by the opinion.

APPLETON, C. J., WALTON, BARROWS, DANFORTH and VIRGIN, JJ., concurred.