2012 ME 28

**Marianne McGETTIGAN et al.**

v.

**TOWN OF FREEPORT.**

Supreme Judicial Court of Maine.

Argued: Jan. 10, 2012.
Decided: March 8, 2012.

Hillary J. Massey, Esq. (orally), and Timothy J. O'Brien, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellants Marianne McGettigan, Donald Rice, and Judith Blanchard.

1. The court concluded that a third plaintiff, Judith Blanchard, did not have standing.

Noreen A. Patient, Esq. (orally), Eaton Peabody, Brunswick, for appellee Town of Freeport.

Panel: SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and JABAR, JJ.

MEAD, J.

[¶ 1]  Marianne McGettigan and Donald Rice appeal, and the Town of Freeport cross-appeals, from the judgment entered in the Superior Court (Cumberland County, *Mills, J.*) dismissing McGettigan and Rice's amended complaint against the Town. The court determined that although McGettigan and Rice had standing to pursue their cause of action,[1] the case was moot.  McGettigan and Rice argue that the case is not moot.  The Town argues that the court erred in finding that McGettigan and Rice have standing.  We agree that the case is not moot, but conclude that McGettigan and Rice cannot prevail on the merits of their amended complaint.  As a result, we vacate the judgment dismissing their amended complaint and remand for the entry of a judgment in favor of the Town on the merits of the amended complaint and denying the request for an injunction.

## I.  BACKGROUND

[¶ 2]  On April 6, 2010, the Freeport Town Council voted to outsource the Town's emergency dispatch services to the Town of Brunswick.  The Town Council authorized the Town's attorney to draft a contract to effectuate the transfer and authorized the town manager to execute the contract.  On June 29, 2010, the town manager signed the contract transferring the Town's emergency dispatch services to the

That decision is not challenged in this appeal.

Town of Brunswick, and the Town made a capital payment of $122,500 to the Town of Brunswick. The contract commenced on July 1, 2010, and terminates on June 30, 2016.

[¶ 3] Section 6.10 of the Town's charter provides that multi-year contracts must be "made or approved by ordinance."[2] On October 1, 2010, McGettigan and Rice filed an amended complaint requesting a declaratory judgment that the contract was void because it was inconsistent with section 6.10 and seeking to enjoin the Town from implementing the transfer of emergency dispatch services. Nevertheless, on October 7, 2010, the Town's emergency dispatch services were transferred to the Town of Brunswick. Five days later, on October 12, 2010, at a public meeting, the Town Council voted five-to-one in favor of an ordinance that ratified the contract. McGettigan and Rice were present at the meeting.

[¶ 4] Prior to the outsourcing of emergency dispatch services, the Town offered its residents a "Reassurance Program." This voluntary program allowed participants to call a dispatcher each morning to report that they were awake and well. The dispatcher would make a note of each person who called and would cross-reference the list of callers with a list of participants. If a participant did not call, the dispatcher would call the participant to make sure that he or she was awake and well. If the participant did not answer, the dispatcher would send a police officer to the participant's residence to see if the participant needed assistance.

[¶ 5] The Reassurance Program was integrated into the Town of Brunswick's "Good Morning Program" when the outsourcing of emergency dispatch services went into effect. The Good Morning Program is substantially similar to the Reassurance Program. However, McGettigan and Rice maintained that the Good Morning Program is not operated as well as the Reassurance Program.

[¶ 6] McGettigan and Rice had utilized the Town's emergency dispatch services prior to the transfer to the Town of Brunswick, and Rice had been a participant in the Reassurance Program. McGettigan suffers from a disability, and Rice has a medical condition. They are both residents of the Town and pay real estate and personal property taxes to the Town.

[¶ 7] On October 20, 2010, the Town filed a motion to dismiss McGettigan and Rice's amended complaint, arguing that the case was moot and McGettigan and Rice did not have standing to bring their

---

**2.** Section 6.10 provides, in relevant part:

(b) *Payments and Obligations Prohibited:* No payment shall be made or obligation incurred against any allotment or appropriation except in accordance with appropriations duly made and unless the manager or the manager's designee first certifies that there is a sufficient unencumbered balance in such allotment or appropriation and that sufficient funds therefrom are or will be available to cover the claim or meet the obligation when it becomes due and payable. Any authorization of payment or incurring of obligation in violation of the provisions of the Charter shall be void and any payment as made illegal; such action shall be cause for removal of any officer who knowingly authorized or made such payment or incurred such obligations, and the officer shall also be liable to the town for any amount so paid. However, except where prohibited by law, nothing in this Charter shall be construed to prevent the making or authorizing of payments or making of contracts for capital improvements to be financed wholly or partly by the issuance of bonds or to prevent the making of any contract or lease providing for payments beyond the end of the fiscal year, provided that such action is made or approved by ordinance.

Freeport, Me., Charter § 6.10(b) (Nov. 2, 2010).

cause of action against the Town. The court, without holding a hearing, granted the motion, finding that the case was moot because the Town had approved the outsourcing contract by ordinance at the October 12 public meeting, thereby complying with section 6.10 of the Town's charter. This appeal followed.

## II. DISCUSSION

### A. Mootness

[¶ 8] McGettigan and Rice argue that the case is not moot because the contract for the transfer of dispatch services was void from its inception and, therefore, could not be ratified by ordinance.

[¶ 9] The Town, on the other hand, maintains that the case is moot because the October 7, 2010, ordinance properly ratified the contract for the transfer of dispatch services, bringing it into conformance with section 6.10 of the charter.

[¶ 10] We review de novo the trial court's legal conclusion that the case is moot. *See Roberts v. Roberts,* 2007 ME 109, ¶ 6, 928 A.2d 776. An issue is moot when "there is no real and substantial controversy, admitting of specific relief through a judgment of conclusive character." *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.,* 2011 ME 48, ¶ 5, 18 A.3d 824 (quotation marks omitted). "When determining whether a case is moot, we examine whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources." *Id.* (quotation marks and alteration omitted).

[¶ 11] The parties' arguments, although framed in terms of mootness, center on whether the October 7, 2010, ratification of the multi-year contract by ordinance satisfied the requirements of section 6.10 of the charter. The trial court determined that ratification of the contract by ordinance fell within the "made or approved by ordinance" language of section 6.10. Thus, the trial court's determination that the case was moot was predicated on its conclusion that the Town's interpretation of section 6.10 was accurate. Accordingly, there is still a real and substantial controversy as to whether that interpretation is correct.

[¶ 12] Further, the current contract has not been fully performed and does not conclude until 2016; thus, sufficient practical effects will flow from our resolution of this litigation. *Cf. Carroll F. Look Constr. Co. v. Town of Beals,* 2002 ME 128, ¶ 7, 802 A.2d 994 (explaining that a determination as to whether a construction contract awarded to a bidder by a municipality was lawful would have no practical effect because the contract had already been performed). This case is not moot.

### B. Section 6.10

[¶ 13] The interpretation of a municipal charter is a question of law reviewed de novo. *See Kittery Retail Ventures, LLC v. Town of Kittery,* 2004 ME 65, ¶¶ 10–17, 856 A.2d 1183; *Passamaquoddy Water Dist. v. City of Eastport,* 1998 ME 94, ¶¶ 5–7, 710 A.2d 897. We construe the words of a charter according to their plain and ordinary meaning and, when that meaning is clear, we will only look beyond those words if the result is illogical or nonsensical. *See Passamaquoddy Water Dist.,* 1998 ME 94, ¶ 5, 710 A.2d 897 (quotation marks omitted). Additionally, "the interpretive principle that nothing in a statute may be treated as surplusage if a reasonable construction supplying meaning and force is otherwise possible" guides our assessment of a charter's language. *Id.* ¶ 5 (quotation marks and alteration omitted).

[¶ 14] Here, section 6.10 provides that multi-year contracts must be "made or approved by ordinance." The word "approved" is ordinarily understood in this context as meaning to formally sanction or endorse. *See Webster's Third New International Dictionary of the English Language Unabridged* 106 (2002). Thus, the plain meaning of the phrase "approved by ordinance" within section 6.10 contemplates the ratification by ordinance of a contract that has already been drafted, agreed upon, and executed by the proper municipal officials. Moreover, to interpret the phrase "approved by ordinance" as requiring the passage of an ordinance *before* the Town could form a multi-year contract would render the word "made" within the context of section 6.10 mere surplusage. Accordingly, the multi-year contract transferring the Town's emergency dispatch services to the Town of Brunswick is not void because the passage of the October 7, 2010, ordinance was in conformance with section 6.10 of the charter.

[¶ 15] Because we conclude that McGettigan and Rice have not prevailed on the merits of their amended complaint, we do not reach the Town's argument regarding whether McGettigan and Rice have standing.

## III. CONCLUSION

[¶ 16] In summary, the court erred by dismissing the amended complaint because the passage of the ordinance ratifying the transfer of dispatch services contract did not render the case moot. However, the passage of the ordinance did satisfy the "made or approved by ordinance" requirement of section 6.10 of the charter.

The entry is:

Judgment vacated. Remanded to the Superior Court for the entry of a judgment in favor of the Town on the merits of the amended complaint and denying the request for an injunction.