STATE OF MAINE
ANDROSCOGGIN, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUBSC-AP-15-008

PAUL CARON,                          )
                                     )
         Petitioner,                 )
                                     )
    v.          RECEIVED & FILED     )        DECISION ON RULE 80B APPEAL
                                     )
TOWN OF POLAND,   MAR 0 3 2019       )
                  ANDROSCOGGIN
         Respondent. SUPERIOR COURT

Petitioner Paul Caron brings this action pursuant to Maine Rule of Civil Procedure 80B. Petitioner appeals a denial of emergency general assistance by the Town of Poland. Based on the following, the decision of the fair hearing officer is affirmed.

## I.    BACKGROUND

Petitioner lives in a mobile home with his 12 year-old son. (Tr. 4:29-32; 9:31-32.) Petitioner was last employed in 2013. (Tr. 6:11-12.) Petitioner is presently applying for Social Security disability benefits. (Tr. 6:9-22.) Petitioner's only source of income for himself and his son are child support payments in the amount of $130.00 per month. (App. 2.)

On June 24, 2015, Petitioner applied for emergency general assistance from the Town of Poland. (Tr. 1:1-6.) Petitioner requested emergency general assistance in the amounts of $280.00 for rent and $100.00 for electricity. (Tr. 3:11.) Petitioner requested the $100.00 for electricity because he was facing disconnection of his electricity service. (Tr. 3:1-6.) Petitioner brought a most recent copy of his electricity bill to his appointment with the general assistance administrator, which showed a past-due balance of $509.00. (Tr. 2:16-3:1.) Petitioner did not bring a disconnection notice to his

appointment. (Tr. 2:1-3.) Petitioner testified at the fair hearing that he needed to pay $99.00 to avoid disconnection of his electricity. (Tr. 3:3-10.) The general assistance administrator denied Petitioner's application for emergency general assistance, because he could not provide evidence of his disability or evidence that he was searching for employment. (Tr. 1:1-6; 7:10-8:3.) The general assistance administrator did not consider Petitioner's situation to be an emergency. (Tr. 4:14-15.) Petitioner's electricity was disconnected two days later, on June 26, 2015. (Tr. 5:9-16.)

Petitioner requested a fair hearing, which was held on July 7, 2015, before a fair hearing officer. (App. 17). Petitioner challenged only the general assistance administrator's denial of emergency general assistance to pay his electricity bill. (*Id.*) Petitioner and the general assistance administrator testified at the fair hearing. The fair hearing officer found that Petitioner had specifically applied for "Emergency General Assistance" and not mere general assistance. (*Id.*) On July 10, 2015, the fair hearing officer issued a decision denying Petitioner's request for emergency general assistance. (*Id.*) Petitioner timely appealed.

Oral argument on Petitioner's appeal was held on February 2, 2016. At oral argument, counsel for Petitioner stated that Petitioner's electricity had been restored. The court requested the parties submit memoranda addressing whether this case still presented a judiciable controversy or whether the case had become moot.

## II. MOOTNESS

As a threshold matter, the court declines to dismiss Petitioner's Rule 80B appeal as moot. "An issue is moot when there is no real and substantial controversy, admitting of specific relief through a judgment of conclusive character. *McGettigan v. Town of Freeport*, 2012 ME 28, ¶ 10, 39 A.3d 48 (citation and quotation marks omitted). To determine whether a case is moot, the court examines "whether there remain sufficient

practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources. *Id.* However, there are several exceptions to the mootness doctrine. Specifically, the court will still consider issues that are otherwise moot if "the issues are capable of repetition but evade review because of their fleeting or determinate nature." *Anthem Health Plans of Me., Inc. v. Superintendent of Ins.*, 2011 ME 48, ¶ 8, 18 A.3d 824.

In the case of *In re Marcial O.*, an appellant challenged an involuntary commitment order. *In re Marcial O.*, 1999 ME 64, ¶ 1, 728 A.2d 158. Before the appeal could be heard, appellant was released from involuntary commitment. *Id.* ¶ 6. The Superior Court and Law Court both considered the case under the exception to the mootness doctrine. *Id.* ¶¶ 6, 13. The Law Court stated that the case presented more than just evidentiary issues particular to the case, it presented issues regarding the proper application of a statute. *Id.* ¶ 12. The Law Court held that the specific questions of law raised by the case, i.e. the proper application of the statute, were likely to be repeated, but unlikely to ever be fully litigated. *Id.*

Here, the factual circumstances of Petitioner's case are not likely to repeat. If Petitioner were to apply for emergency general assistance in future, the fact of Petitioner's situation may differ and Petitioner may present different evidence to the general assistance administrator. However, the issues raised by Petitioner's Rule 80B appeal concern the proper interpretation and application of the emergency general assistance provisions contained in the general assistance statute and the Town of Poland's ordinances. These questions of law are likely to be repeated. Further, given the fleeting nature of emergency situations, these questions of law are also likely to escape judicial review. Therefore, the court declines to dismiss Petitioner's Rule 80B appeal as moot.

## III. STANDARD OF REVIEW

When acting as an appellate court pursuant to Maine Rule of Civil Procedure 80B, the court reviews government agency decisions for errors of law, abuse of discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024. The petitioner challenging the decision below bears the burden of proof to overturn the decision. *Id.* The petitioner must establish that the decision maker's findings are unsupported by record evidence and that the record compels contrary findings. *Total Quality, Inc. v. Town of Scarborough*, 588 A.2d 283, 284 (Me. 1991).

The court reviews interpretations of statutes and municipal ordinances *de novo*. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245. In construing a statute or ordinance, the court looks first to the plain meaning of its language to give effect to the legislative intent, and if the meaning of the statute or ordinance is clear, the court need not look beyond the words themselves. *Wister v. Town of Mt. Desert*, 2009 ME 66, ¶ 17, 974 A.2d 903. The statute or ordinance "must not be construed to create absurd, inconsistent, unreasonable, or illogical results." *Duffy v. Town of Berwick*, 2013 ME 105, ¶ 23, 82 A.3d 148.

## IV. GENERAL ASSISTANCE STATUTE AND MUNICIPAL ORDINANCE

Maine's general assistance statute requires municipalities to administer by ordinance a general assistance program to provide immediate aid to persons who are unable to provide basic necessities essential to maintain themselves or their families. 22 M.R.S. §§ 4301(5), 4305(1). The general assistance program provides a specific amount and type of aid for defined needs during a limited period of time. *Id.* § 4301(5). The ordinance enacted by municipalities must establish standards, in addition to need, for

determining the eligibility of persons applying for relief and the amount of assistance provided to each eligible person. *Id.* § 4305(3)(A).

Maine's general assistance statute provides that, for first-time applicants, eligibility for general assistance is determined solely on the basis of need. *Id.* § 4308(1). The eligibility of repeat applicants is determined based on need and other conditions of eligibility established by the statute and municipal ordinance. *Id.* Section 4316-A of the general assistance statute provides:

> An applicant is ineligible for assistance for 120 days in all municipalities in the State when any municipality establishes that the applicant, without just cause:
> A. Refuses to search for employment when that search is reasonable and appropriate;
> B. Refuses to register for work;
> C. Refuses to accept a suitable job offer under this section;...

*Id.* § 4316-A(1)(A-C). Just cause for failure to meet the work requirements of § 4316-A will be found when there is "reasonable and verifiable evidence" that the applicant suffers for a "physical or mental illness or disability." *Id.* § 4316-A(5)(A).

Similarly, the Town of Poland's Ordinance § 5.5 also provides that, as a condition of eligibility, all recipients of general assistance are required to work or look for work unless there is "reasonable and verifiable evidence" that the recipient is disabled or has other just cause for not fulfilling the work requirement as defined in the ordinance. Poland, Me., Gen. Assist. Ordinance, § 5.5 ("Ordinance, § 5.5"). Repeat applicants who fail to meet the ordinance's work requirement, without just cause, are ineligible for further assistance for 120 days. *Id.*

Maine's general assistance statute also provides for emergency general assistance. The statute states:

> A person who does not have sufficient resources to provide one or more basic necessities in an emergency is eligible for emergency general

assistance, even when that applicant has been found ineligible for nonemergency general assistance, except as provided in this subsection.

A. A person who is currently disqualified from general assistance for a violation of section 4315, 4316-A or 4317 is ineligible for emergency assistance under this subsection.

B. Municipalities may by standards adopted in municipal ordinances restrict the disbursement of emergency assistance to alleviate emergency situations to the extent that those situations could not have been averted by the applicant's use of income and resources for basic necessities. The person requesting assistance shall provide evidence of income and resources for the applicable time period.

A municipality may provide emergency assistance when the municipality determines that an emergency is imminent and that failure to provide assistance may result in undue hardship and unnecessary costs.

22 M.R.S. § 4308(2). The statute defines an "emergency" as:

[A]ny life threatening situation or a situation beyond the control of the individual which, if not alleviated immediately, could reasonably be expected to pose a threat to the health or safety of a person.

Id. § 4301(4). The statute also defines "basic necessities" to include electricity. Id. §

4301(1).

The Town of Poland's ordinance also addresses emergency general assistance.

Ordinance § 4.9 provides:

Although they may otherwise be considered ineligible to receive general assistance, persons who apply for assistance to alleviate an emergency may be granted assistance, ...
...
A municipality may provide emergency assistance when the municipality determines that an emergency is imminent and that failure to provide assistance may result in undue hardship and unnecessary costs to either the [applicant] or the municipality.
...
A person who is currently disqualified from receiving General Assistance due to violation of sections 5.5 ... of this ordinance is ineligible to receive emergency assistance.

Poland, Me., Gen. Assist. Ordinance, § 4.9 ("Ordinance, § 4.9"). Additionally, Ordinance § 6.8 governing basic necessities and maximum levels of assistance also provides:

> Disconnection of utility service will not be considered an emergency in all cases. The administrator will make an individual, factual analysis to determine if the termination of utility service constitutes an emergency. The administrator will consider the household composition, the time of year, the age and health of the household members, and other appropriate factors in reaching a decision.

Poland, Me., Gen. Assist. Ordinance, § 6.8 (C) ("Ordinance, § 6.8 (C)").

## V.    ANALYSIS

The fair hearing officer found that Petitioner had specifically applied for "Emergency General Assistance" and not mere general assistance. (App. 17.) The fair hearing officer denied Petitioner's request for emergency general assistance on four grounds: (1) Petitioner did not provide evidence that he was disabled and therefore unable to work; (2) Petitioner was unable to provide evidence that he has tried to find employment; (3) Petitioner's need was not an emergency because it was not "unforeseen;" (4) lack of electricity is not considered life-threatening during summer months and Petitioner still has running water. (*Id.*)

### A.    The Lack of Evidence of Disability and Evidence of Job Search

Regarding the first two grounds, the fair hearing officer's determination that Petitioner was ineligible for emergency general assistance because Petitioner failed to provide evidence of his disability or evidence that he has tried to find employment constitute an error of law. The fair hearing officer found that the general assistance administrator had asked Petitioner for evidence from Petitioner's physician documenting his disability. (App. 17.) Petitioner was unable to provide the general

assistance administrator such evidence. (*Id.*) Petitioner also informed the general assistance administrator that he was not applying for jobs. (*Id.*)

The general assistance statute plainly and unambiguously states that a "person who does not have sufficient resources to provide one or more basic necessities in an emergency is eligible for emergency general assistance, *even when the applicant has been found ineligible for nonemergency general assistance,*" except if the person is "*currently disqualified* from general assistance for a violation section 4315, 4316-A, or 4317."[1] 22 M.R.S. § 4308(2)(A) (emphasis supplied). Under § 4316-A, "[a]n applicant is ineligible for general assistance for 120 days" if the applicant refuses to search for work, register for work, or accept suitable work without just cause. *Id.* § 4316-A(1).

The Town of Poland's Ordinance § 4.9 similarly states in plain and unambiguous language, "Although they may otherwise be considered ineligible to receive general assistance, persons who apply for assistance to alleviate an emergency may be granted assistance," except that "[a] person who is *currently disqualified* from receiving General Assistance due to violations of sections 5.5, ... is ineligible for emergency assistance." Ordinance, § 4.9 (emphasis supplied). Like, § 4316-A, Ordinance § 5.5 states that a repeat applicant "will be considered ineligible for further assistance for 120 days" if they fail to meet the work requirement without just cause. Ordinance, § 5.5.

Thus, both § 4308 and Ordinance § 4.9 plainly and unambiguously state that a person, who is ineligible for general assistance, may still receive emergency general assistance. Neither the statute nor the ordinance requires repeat applicants to meet the work requirement to obtain emergency general assistance. Under both § 4308 and

---

[1] Section 4315 governs ineligibility for making false representations. 22 M.R.S. § 4315. Section 4317 governs ineligibility for failing to secure other available resources. *Id.* § 4317. The fair hearing officer made no findings that Petitioner made false representations or failed to secure other available resources. Neither section is at issue in this case.

Ordinance § 4.9, the work requirement is only relevant if the applicant is "currently disqualified" under § 4316-A and Ordinance §5.5, both of which disqualify repeat applicants from general assistance for 120 days for failing to meet the work requirement without just cause. Thus, if an applicant had applied and been found ineligible for general assistance, then the applicant would be "currently disqualified" for emergency general assistance for the 120-day period.

Petitioner in this case was not required to meet the work requirements of § 4316-A and Ordinance §5.5 in order to be eligible for emergency general assistance. The fair hearing officer made no finding that Petitioner had applied for general assistance in any municipality in the last 120 days and been deemed ineligible for any further assistance. Therefore, the fair hearing officers determination constitutes an error of law.

B. Petitioner's Need was not an Emergency because it was not "Unforeseen"

The fair hearing officer's third ground for denying Petitioner's application also constitutes an error of law. The fair hearing officer found that, during the hearing, Petitioner testified that he had a payment plan with the electric company but had fallen behind in payments by several months. (App. 17.) The fair hearing officer's decision states, "You knew your final electric bill was coming due and could have come in sooner thus not creating an 'emergency'; therefore this situation is not 'unforeseen.'" (*Id.*)

The Town of Poland General Assistance Program appointment notice initially provided to Petitioner stated:

Emergency Assistance - Emergencies are classified as UNFORESEEN events. Evictions, disconnection of utilities, being out of heating fuel are not considered unforeseen and will therefore not be considered emergencies.

(App. 6.) During the hearing, the general assistance administrator testified that "an emergency is defined as unforeseen or life-threatening" in addition to being an imminent threat. (Tr. 3:21; 4:15-16) The general assistance administrator also stated, "The other thing an emergency – with this bill, [Petitioner] obviously hasn't been paying that electric bill for a while. If he hasn't been receiving income to pay that bill he should have been in here prior to the emergency. It was not an unforeseen emergency that his power would be shut off." (Tr. 8:5-8.) The general assistance administrator reiterated that she did not consider Petitioner's circumstances an emergency "because it's not unforeseen." (Tr. 9:8.)

Neither the general assistance statute nor the ordinance requires a situation to be "unforeseen" in order to constitute an emergency. The general assistance statute unambiguously defines an "emergency" as "any life threatening situation or a situation beyond the control of the individual which, if not alleviated immediately, could reasonably be expected to pose a threat to the health or safety of a person." 22 M.R.S. § 4301(4). Ordinance §4.9 provides a similar definition for an "emergency." Ordinance, §4.9. Thus, to constitute an emergency under both the statute and the ordinance, the only requirements are that a situation be (1) either life-threatening or "beyond the control of the individual;" and (2) "if not alleviated immediately, could reasonably be expected to pose a threat to the health or safety of a person." 22 M.R.S. § 4301(4); Ordinance, §4.9.

Although Ordinance § 6.8(C) does state that disconnection of utility service will not be considered an emergency in all cases and that the administrator will make an individual, factual analysis to determine if the termination of utility service constitutes an emergency based on "appropriate factors," Ordinance § 6.8(C) does not expressly require a situation be "unforeseen" in order to be emergency. Ordinance, § 6.8(C).

Thus, the statute and the ordinance did not require Petitioner's situation to be "unforeseen" in order to constitute an emergency.

Therefore, the fair hearing officer committed an error of law in determining that Petitioner's situation did not constitute an emergency because the situation was not "unforeseen."

C.    Petitioner's Lack of Electricity was not Life-Threatening during Summer Months and because Petitioner still had Running Water

The fair hearing officer found that Petitioner applied for emergency general assistance on June 24, 2015, in order to pay an electric bill and avoid disconnection. (App. 17.) During the hearing, Petitioner testified that his electricity was disconnected two days later on June 26, 2015. (Tr. 5:9-16.) Petitioner testified that he still had running water. (Tr. 5:3-4.) Petitioner testified that he could not cook, did not have hot water, and had to bathe at his mother's home because of the lack of electricity. (Tr. 5:1-21.)

Although the general assistance statute includes electricity as a "basic necessity," Ordinance § 6.8(C) plainly and unambiguously states that disconnection of utility service will not be considered an emergency in all cases and that the administrator will make an individual, factual determinations. Ordinance, § 6.8(C). In deciding whether disconnection of a utility constitutes an emergency, the administrator considers appropriate factors, including the time of year. *Id.* Here, the fair hearing officer properly determined that, based on the time of year and the fact that Petitioner still had running water; the disconnection of Petitioner's electricity did not constitute an emergency. Therefore, the fair hearing officer's determination that Petitioner's circumstances did not constitute an emergency was supported by substantial evidence and was not an error of law or an abuse of discretion.

## VI. CONCLUSION

The decision of the fair hearing officer is affirmed.

The Clerk is directed to enter this Order on the civil docket by reference pursuant to Maine Rule of Civil Procedure 79(a).

Date: 3/3/16

Mary Gay Kennedy
Justice, Superior Court