2007 ME 114

**CITIZENS COMMUNICATIONS CO.**

v.

**ATTORNEY GENERAL.**

**Societe Colas, S.A. et al.**

v.

**Department of the Attorney General, and Department of Environmental Protection.**

Supreme Judicial Court of Maine.

Argued: June 19, 2007.
Decided: Aug. 16, 2007.

---

Martha C. Gaythwaite (orally), Bruce W. Hepler, Friedman Gaythwaite Wolf & Leavitt, Portland, for appellant.

Michael Kaplan, John P. McVeigh (orally), Sigmund D. Shutz, Preti Flaherty Beliveau & Pachios, LLP, Portland, for Societe Colas, S.A. & Barrett Paving Materials, Inc., appellees.

G. Steven Rowe, Attorney General, Mary M. Sauer, Asst. Atty. Gen. (orally), Augusta, for appellees.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

SILVER, J.

[¶ 1] Citizens Communications Co. appeals from a judgment entered in the Superior Court (Kennebec County, *Marden, J.*) declaring that the draft settlement documents exchanged between Citizens, the City of Bangor, and the Department of Environmental Protection (DEP) are public records subject to the disclosure requirements of the Maine Freedom of Access Act (FOAA), 1 M.R.S. §§ 401–411 (2006). Citizens argues that its negotiations with the City and DEP are privileged from disclosure under the FOAA. We disagree and affirm the judgment of the Superior Court.[1]

## I. BACKGROUND

[¶ 2] The material facts are undisputed. In or about 2002, DEP designated Dunnett's Cove, a portion of the Penobscot River contaminated with coal tar, as an uncontrolled hazardous substance site pursuant to 38 M.R.S. § 1364(4) (2006). *See also* 38 M.R.S. § 1365 (2006). The Cove is at least partially owned by the City. Seeking response costs for the clean-up of the Cove, the City, pursuant to federal hazardous waste laws, sued Citizens in the United States District Court for the District of Maine, alleging Citizens to be responsible for the coal tar contamination. Citizens filed third-party complaints against other entities that allegedly caused the contamination, including Barrett Paving Materials, Inc. One of the third parties also brought a fourth-party complaint against Societe Colas, S.A.

[¶ 3] The District Court (*Singal, J.*) stayed Citizens's actions against the third parties and the actions against the fourth parties, and ordered the case to move forward in three separate phases. In Phase I, the City and Citizens were to proceed to trial. However, before trial, the City, DEP, and Citizens entered into confidential negotiations to develop a remediation plan. This settlement attempt failed, and the claims between the City and Citizens were tried in the District Court. In 2006, the District Court found both the City and Citizens partially liable for polluting the Cove.

[¶ 4] Following the District Court's findings, the City, DEP, and Citizens recommenced their confidential negotiations to develop a remediation plan. Pursuant to

---

1. We also deny Barrett Paving Materials, Inc.'s motion to dismiss Citizens's appeal on mootness grounds. The motion is unpersuasive and does not merit further discussion.

this effort, the parties and DEP exchanged draft consent decrees.

[¶ 5] During the pendency of the negotiations in February 2007, Societe Colas, S.A. and Barrett Paving Materials, Inc. (referred to collectively as "Colas") filed a FOAA request for the draft consent decrees and other related documents. The State agreed to provide the requested records. However, before the State released the documents, Citizens commenced a lawsuit in the Superior Court to enjoin the disclosure. Colas filed a separate action in the Superior Court seeking a declaration that the draft settlement documents exchanged between DEP, the City, and Citizens were public records subject to FOAA's mandatory disclosure requirements. The Superior Court consolidated the two actions.

[¶ 6] The Superior Court found in favor of Colas, denied any relief to Citizens, and ordered the State to disclose the records. Upon Citizens's oral motion, the Superior Court stayed its judgment to allow Citizens to appeal. Citizens filed this appeal.

## II. LEGAL ANALYSIS

[¶ 7] Citizens makes two arguments in support of its contention that the draft settlement documents are not "public records" under FOAA because they fall within the privileged records exception to the disclosure requirement. First, Citizens urges us to create and then apply a common law settlement negotiation privilege. Second, Citizens argues that the documents are exempted from disclosure because they fall within the purview of the attorney-client privilege.

[¶ 8] "Public records" under FOAA means:

any written, printed or graphic matter or any mechanical or electronic data compilation from which information can be obtained, directly or after translation into a form susceptible of visual or aural comprehension, that is in the possession or custody of an agency or public official of this State or any of its political subdivisions, or is in the possession or custody of an association, the membership of which is composed exclusively of one or more of any of these entities, and has been received or prepared for use in connection with the transaction of public or governmental business or contains information relating to the transaction of public or governmental business ....

1 M.R.S. § 402(3). Records exempt from the disclosure requirement under the privilege exception include "[r]ecords that would be within the scope of a privilege against discovery or use as evidence recognized by the courts of this State in civil or criminal trials if the records or inspection thereof were sought in the course of a court proceeding." 1 M.R.S. § 402(3)(B).

[¶ 9] The interpretation of FOAA's requirements and exemptions is a question of law that we review de novo. *See Passamaquoddy Water Dist. v. City of Eastport,* 1998 ME 94, ¶ 5, 710 A.2d 897, 899. In construing FOAA's statutory provisions, we will consider the underlying public policy and rules of construction expressed by the Legislature in 1 M.R.S. § 401. The public policy guiding the interpretation of FOAA is the Legislature's declaration that "public proceedings exist to aid in the conduct of the people's business. It is the intent of the Legislature that their actions be taken openly and that the records of their actions be open to public inspection and their deliberations be conducted openly." 1 M.R.S. § 401. To that end, the Legislature instructed that FOAA "shall be liberally construed and applied to promote its underlying purposes and policies." *Id.* We have further elaborated that "a corollary to such liberal con-

struction of [FOAA] is necessarily a strict construction of any exceptions to the required public disclosure." *Moffett v. City of Portland,* 400 A.2d 340, 348 (Me.1979).

## A. Creation of a Settlement Negotiation Privilege

[¶ 10] Citizens asks us to create a new privilege to preclude disclosure of the requested draft settlement documents.

[¶ 11] Colas urges us to reject Citizens's request because it runs afoul of M.R. Evid. 501,[2] which eliminated all common law privileges, and because the Supreme Judicial Court, sitting as the Law Court, is not the proper forum for the creation of a new privilege.

[¶ 12] We agree with Colas and decline the invitation to create a new privilege that would bar the discoverability of draft settlement documents. We are not persuaded that the public policy underlying a settlement negotiation privilege could be fairly reconciled with the letter and spirit of FOAA. The Legislature denoted its intent to favor public access to documents at the expense of confidentiality of settlement discussions.

[¶ 13] Nor do we find compelling Citizens's argument that, without a settlement negotiation privilege, polluters will be less willing to negotiate an environmental clean-up agreement with the State. "[T]he alternative to settlement would be a double whammy: the loss of the benefit of the bargain and the more public airing occasioned by a full-blown trial." *In re Subpoena Issued to Commodity Futures Trading Comm'n,* 370 F.Supp.2d 201, 212

(D.D.C.2005) (quoting *Bennett v. La Pere,* 112 F.R.D. 136, 140 (D.R.I.1986)).

[¶ 14] Even if we found Citizens's argument for the creation of a settlement negotiation privilege persuasive, we could not grant their request in our capacity as the Supreme Judicial Court, sitting as the Law Court. We can only create new privileges pursuant to our rule-making powers as the Supreme Judicial Court. M.R. Evid. 501; *see* 4 M.R.S. § 9–A (2006).

## B. Applicability of the Attorney–Client Privilege

[¶ 15] Citizens next argues that because the attorney-client privilege grants a privileged status to communications between parties and their representatives when those communications concern a matter of common interest, its communications with the City and DEP are privileged because they share a common interest to thoroughly clean up the environmental contamination of the Cove.

[¶ 16] Colas and the State argue that the attorney-client privilege does not protect communications between adverse parties on opposite sides of the bargaining table. Rather, they contend, the common interest component of the privilege prevents clients from waiving the attorney-client privilege when attorney-client communications are shared with a third person who has a common legal interest with respect to the communications, such as a co-defendant. We agree.

[¶ 17] M.R. Evid. 502(b), Lawyer–Client Privilege, provides in pertinent part:

---

2. M.R. Evid. 501, Privileges Recognized Only As Provided, states:

Except as otherwise provided by Constitution or statute or by these or other rules promulgated by the Supreme Judicial Court of this state no person has a privilege to:
1. Refuse to be a witness; or

2. Refuse to disclose any matter; or
3. Refuse to produce any object or writing; or
4. Prevent another being a witness or disclosing any matter or producing any object or writing.

General rule of privilege. A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) ... or (3) by the client or the client's representative or the lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein ....

[¶ 18] The argument that adverse entities have shared interests merely because they are willing to negotiate a settlement is an attempt to distort the scope of the attorney-client privilege. The City, DEP, and Citizens clearly do not have a common interest as the term is contemplated by Rule 502(b)(3). The DEP is operating in its enforcement capacity to negotiate an allocation of clean-up responsibilities, whereby as much of the costs and labor are assumed by the liable parties. The City and Citizens, public and private entities respectively, have been found responsible for polluting the Cove, and seek to minimize their clean-up responsibilities. Each entity thus has highly divergent and opposing interests.

The entry is:

Motion to dismiss denied. Judgment affirmed.