STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-21-0216

KAITLYN THURLOW, SOUTH PORTLAND )
POLICE PATROL UNIT, and SOUTH )
PORTLAND POLICE COMMAND & )
SUPERVISORY UNIT )
              )
    Plaintiffs         )
              )
              )
   v.             )
              )
              )     ORDER
CITY OF SOUTH PORTLAND      )
              )
    Defendant        )
              )
   v.             )
              )
COREY HAMILTON and MARCUS   )
WRAIGHT           )
              )
    Parties-in-Interest     )
              )

Before the Court are the parties' cross motions for summary judgment. Defendant City of South Portland's ("South Portland" or "City") Motion for Summary Judgment is GRANTED. Plaintiffs Kaitlyn Thurlow, South Portland Police Patrol Unit and South Portland Police Command and Supervisory Unit's (collectively "plaintiffs"), Motion for Summary Judgment is DENIED.

## FACTUAL BACKGROUND

RECD CUMB CLERKS OFF
JUN 24 '22 PM 2:26

1

This Case addresses the potential release of multiple letters of reprimand issued by the South Portland Police command structure to various officers. Plaintiff Kaitlyn Thurlow's initial complaint was filed with the intention of preventing the City from producing two letters of reprimand in response to a Freedom of Access Act ("FOAA") by Party in Interest Corey Hamilton. The case has since evolved to seek declarations on behalf of multiple South Portland officers, preventing the release of written reprimands to another FOAA petitioner — Marcus Wraight, Party in Interest, and local criminal defense attorney

## I.  Officer Thurlow

Plaintiff Kaitlyn Thurlow ("Thurlow") was employed as a patrol officer with the City of South Portland until June 22nd, 2021. (Defendant's Statement of Material Facts ("Def.'s S.M.F.") ¶ 1.) At all times Thurlow was employed by the City, she was subject to the terms and conditions of the collective bargaining agreement between the City and the South Portland Police Patrol Association ("Patrol CBA"). (Def.'s S.M.F. ¶¶ 2, 3.) The Patrol CBA stated, *inter alia*, that "no written reprimand shall remain in an employee's personnel folder in excess of one year." (Def.'s S.M.F. ¶ 4.) It also provided that it is an employee's responsibility to request, in writing, removal of a written reprimand from their file after one year. (Def.'s S.M.F. ¶ 4.)

On February 8th, 2020, Thurlow was issued a first written reprimand, and was issued a second, unrelated reprimand on May 14th, 2020. (Def.'s S.M.F. ¶ 6.) Thurlow's second reprimand was signed by Chief Timothy Sheehan and stated that the reprimand would be removed from Thurlow's personnel file on November 14th, 2020, so long as Thurlow was not reprimanded again. (Def.'s S.M.F. ¶ 8.) Thurlow's second written reprimand was removed from her personnel folder on November 14th. (Def.'s S.M.F. ¶¶ 9, 10.)

On or around February 19th, 2021, Thurlow requested, in writing, that the City's Police Chief remove the February 8th, 2020, reprimand from her folder. (Def.'s S.M.F. ¶ 11.) The City complied and removed the written letter. (Def.'s S.M.F. ¶ 12.)

## II. Other Officers

The Patrol CBA that governed Thurlow's employment with the City also governed the employment of other patrol officers. (Def.'s S.M.F. ¶ 14.) In addition to the Patrol CBA, the City also has a CBA with command and supervisory officers ("Command CBA"). (Def.'s S.M.F. ¶ 16.) The Command CBA similarly states that all "letters of reprimand shall be removed from an employee's personnel file one year from the date of issue." (Def.'s S.M.F. ¶ 18.) Under the Command CBA it is also the responsibility of the employee to request, in writing, that the written reprimand be removed from their file. (Def.'s S.M.F. ¶ 18.) From 2010 through 2020, eighteen written reprimands were issued to a total of fifteen South Portland Police Officers. (Def.'s S.M.F. ¶ 21.)

## III. FOAA Requests

On April 16th, 2021, Marcus Wraight ("Wraight") a Maine criminal defense attorney submitted a request for public records under Maine's FOAA ("Wraight FOAA Request"). (Def.'s S.M.F. ¶ 22.) The Wraight FOAA request sought, *inter alia*, "letters of reprimand or other admonition" from the time period of 2010 through 2020. (Def.'s S.M.F. ¶ 23.) On June 14th, 2021, the City notified the Patrol and Command units of its intent to comply with Wraight's FOAA request and both objected to the release of the subject documents, through counsel. (Def.'s S.M.F. ¶¶ 24, 25.)

On April 30th, 2021, Corey Hamilton submitted a FOAA request to the City, seeking "all complaints, internal investigations and disciplinary reports involving South Portland Police

3

Officer Kaitlyn Thurlow, including the final written decision related to such complaints" ("Hamilton's FOAA Request"). (Def.'s S.M.F. ¶ 28.) After reviewing Hamilton's FOAA request, the City determined it would comply and notified Thurlow. (Def.'s S.M.F. ¶ 29.) Thurlow objected to the release of her two written reprimands, through counsel. (Def.'s S.M.F. ¶ 30.)

The City's decision to comply with both the Wraight and Hamilton FOAA Requests centers on their disciplinary process. Whenever an investigation results in a written disciplinary action, the City places a copy of the written action in three different locations. (Def.'s S.M.F. ¶ 34.) One copy is provided to the disciplined officer, another is placed in the officer's personnel file, and a third is placed in the department's internal affairs file. (Def.'s S.M.F. ¶ 34.)

If, in compliance with either the Patrol or the Command CBA, the officer subject to discipline requests removal of the letter from their personnel file, the chief or another administrative designee, may remove the reprimand letter from their personnel file and give it back to the officer. (Def.'s S.M.F. ¶ 36.) The City's practice is to remove the letter only from the officer's personnel file, not their internal affairs file. (Def.'s S.M.F. ¶ 36.) Continuing to store letters of reprimand in the officer's internal affairs file has long been the practice of the City's law enforcement leadership, and, in the city's opinion, subjects them to State laws regarding public disclosure. (Def.'s S.M.F. ¶ 40.)

IV.     **Procedural Posture**

On June 1st, 2021, Thurlow filed a two count complaint seeking to prevent dissemination of her two letters of reprimand pursuant to Hamilton's FOAA request. On June 16th, 2021, Thurlow amended her complaint to account for Wraight's FOAA request and sought a temporary

4

restraining order preventing release of other written reprimands concerning other South Portland officers. That temporary order was granted on June 16th, 2021.

On October 29th, 2021, the City moved for Summary Judgment, and on November 19th, Thurlow filed her opposition and cross motion. Both parties filed their replies in December of 2021. The parties' cross motions, fully briefed, await this Court's decision.

## STANDARD OF REVIEW

When there are cross-motions for summary judgment, the rules for consideration of summary judgment are applied separately to each motion. *F.R. Carroll, Inc. v. TD Bank, N.A.*, 2010 ME 115, ¶ 8, 8 A.3d 646. The record on each summary judgment issue must be considered most favorably to the party objecting to the grant of summary judgment on that issue. *Blue Star Corp. v. CKF Properties LLC*, 2009 ME 101, ¶ 23, 980 A.2d 1270. A party is entitled to summary judgment when review of the parties' statements of material facts and the record to which the statements refer, demonstrates that there is no genuine issue as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821; M.R. Civ. P. 56(c). A contested fact is "material" if it could potentially affect the outcome of the case. *Dyer*, 2008 ME 106 ¶ 14, 951 A.2d 821. A "genuine issue" of material fact exists if the claimed fact would require a factfinder to choose between competing versions of the truth. *Id.* (quotations omitted). Summary judgment may also be used to isolate and decide a dispositive question of law. *Magno v. Freeport*, 486 A.2d 137, 141 (Me. 1985).

## DISCUSSION

In their cross motions, the parties argue primarily over Count II of the complaint.[1] The City argues, as a matter of law, that it may release the letters of reprimand to both Wraight and Hamilton because removal of the reprimand is only required from an officer's personnel folder or file, not an internal affairs file. The Plaintiffs argue that the City's interpretations of both the Command CBA and the Patrol CBA are incorrect and ask the Court to find, as a matter of law, that a letter seeking removal of a written reprimand from a personnel file mandates destruction of the reprimand from all other officer associated files.[2]

---

[1] This Court agrees with the City that because the Court issued a TRO on June 18th, 2021, Thurlow's first count seeking a preliminary injunction is moot. *See Ten Citizens of the Town of Biddeford v. Town of Biddeford*, 2003 ME 59, ¶ 5, 822 A.2d 1196 ("[A] determination of mootness [is made] by examining the record to determine "whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources."). None of the exceptions to the mootness doctrine apply. *See Clark v. Hancock County Comm'rs*, 2014 ME 33 ¶ 13, 87 A.3d 712 (recognizing three exceptions to the Mootness doctrine: (1) sufficient collateral consequences will result from the determination of the questions presented so as to justify relief; (2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and public, the court may address; or (3) the issues are capable of repetition but evade review because of their fleeting or determinate nature).

[2] At the outset, the Court notes its reservations about the procedural vehicle used by the Plaintiffs to bring their claim. While characterized as a declaratory judgment action regarding rights under two CBAs, this action is perhaps better characterized as an appeal of the City's decision to grant two FOAA requests.

An appeal of a municipality's decision to grant a FOAA request has never been squarely addressed by the Law Court. An appeal of an agency's affirmative FOAA decision, however, has. *See Blue Sky West, LLC v. Me. Revenue Servs.*, 2019 ME 137, ¶ 19, 215 A.3d 812.

In *Blue Sky West*, the Law Court acknowledged that the FOAA statute provides a process for seeking judicial review of a *denial* of a FOAA request but provides no explicit procedure for judicial review of a decision to *grant* one. *Id.* Thus, the Law Court determined that judicial review of an agency's decision to grant a FOAA request is governed by 5 M.R.S. § 11001(1) (2022) and M.R. Civ. P. 80C. *Id.*

The Law Court has stated, time and again, that Rule 80C's "municipal analogue" is Rule 80B. *See Dubois v. Town of Arundel*, 2019 ME 21, ¶ 5, 202 A.3d 524. Thus, it is conceivable that the Administrative Procedures Act and Rule 80B would offer an appropriate review process for the operative decisions here: South Portland's decision to grant Hamilton and Wraight's FOAA requests. While the fight here is primarily over whether the City should have removed the letters of reprimand from all personnel associated files, such an assignment of error could have likely been raised in an 80B action. *See* 5 M.R.S. § 11007(4)(C)(1) (2022) ("The Court may . . . reverse or modify the decision if the administrative findings, inferences, conclusions, or decisions are . . . in violation of statutory provisions").

Although 5 M.R.S. § 11001 has strict timelines for filing, the dates in this case, presented by the summary judgment record, also suggest that an 80B action could have been timely brought. Thurlow received notice of the City's decision on May 18th, 2021, and she brought her complaint on June 1st, 2021, well within the thirty day statutory period. *See* 5 M.R.S. § 11002(3) (2022). The other officers received notice on June 14th, 2021, and the First Amended Complaint was filed two days later — also meeting the thirty day standard.

This is not to say Rule 80B procedure is the only, exclusive mechanism for review of the City's decisions. It is to say, however, that, on an area of law never addressed by the Law Court — the decision of a municipality to

## I.    FOAA Applicability

The first question posed by the parties' filings is whether the objects of Wraight and Hamilton's FOAA requests — the eighteen written reprimands — are discoverable under FOAA.

"The purpose of FOAA is to open public proceedings and require that public actions and records be available to the public." *Town of Burlington v. Hosp. Admin. Dist. No. 1*, 2001 ME 59, ¶ 13, 769 A.2d 857; *see also Great N. Paper, Inc. v. Penobscot Nation*, 2001 ME 68, ¶ 43, 770 A.2d 574. To promote such objectives, FOAA must be liberally construed. 1 M.R.S. § 401 (2022); *Town of Burlington*, 2001 ME 59, ¶ 13, 769 A.2d at 861.

FOAA provides that every person has the right to inspect and copy any public record. 1 M.R.S.A. § 408-A (2022).  FOAA defines "public record" as: Any written [or] printed . . . matter . . . that is in the possession or custody of an agency or public official of this State or any of its political subdivisions . . . and has been received or prepared for use in connection with the transaction of public or governmental business . . . . *Id.* § 402(3) (2022).

While it provides liberal access to public records, FOAA also contains some statutory exceptions to the definition of the term "public record." One of those exceptions is "records that have been designated confidential by statute." 1 M.R.S. § 402(3)(A) (2022). "Complaints, charges or accusations of misconduct, replies to those complaints, charges or accusations and any other information or materials that may result in disciplinary action" are generally not public

---

grant a FOAA request — the administrative procedures act and M.R. Civ. P. 80B may offer an appropriate procedure for judicial review.

records. 30-A M.R.S. § 2702(B)(5) (2022). However, the final written disciplinary decision relating to that action is no longer confidential if it imposes or upholds discipline. *Id.*

Here, the written reprimands issued by the South Portland Police Department and reviewed *in camera* by the Court are final, written, disciplinary decisions which describe "conduct or other facts on the basis of which [a] disciplinary action [was] imposed and the conclusions of the acting authority as to the reasons" for the discipline. *Id.* Accordingly, each letter meets the statutory exemption to the "public record" definition found at 1 M.R.S. § 402(3)(A) (2022). None are confidential under the statute.

## II. Applicability of Record Retention Exception

Having concluded that the reprimands are part of the public record, the next question is whether, legally, the City may remove them from the public record under any circumstances. As the City points out, the ability of a state agency or a municipality to destroy public records — especially when it comes to the disciplinary records of municipal employees — is heavily regulated. *See* 5 M.R.S. § 95-B(7) (2022).

The legislature has given authority to the State Archivist to promulgate rules and regulations which effectuate the purposes of the "Archives and Records Management Law" — preserving records "to ensure compliance with requests for public records under the Freedom of Access Act." 5 M.R.S. § 91 (2022). In accordance with that authority, the State Archives has promulgated a "Local Government Record Retention Schedule" which can be found online on

the Maine Secretary of State's website under the "State Archives" tab.[3] The schedule controlling

personnel records is schedule 4, and the series regarding disciplinary records is series 4.2. Me.

State Archives Rec. Retention. Sched. 4, § 4.2.

Series 4.2, titled "Employee Disciplinary Records," requires retention of disciplinary

records for "60 years after separation unless collective bargaining contract requires that

disciplinary documents be destroyed earlier than the contract shall be followed." Me. State

Archives Rec. Retention. Sched. 4, § 4.2 (Retention).

Here, both the Patrol and Command CBAs contain language which provides for

"removal" of disciplinary records from personnel files if a written request is made by an officer

within one year after written discipline is issued. The City maintains that this language differs

from the term "destroy" used in the retention schedule and therefore does not implicate the

exception — resulting in the unlawful discard of public records if they comply with an Officer's

request. The Court disagrees.

Although the terms may be slightly different in plain meaning, their usage carries the

same practical effect. Removal of a written reprimand and destruction of disciplinary documents

achieve the same desired result. Thus, the language of both the Patrol and Command CBAs

implicates the exception to the retention of disciplinary records set forth in series 4.2. The City

---

[3] The prevailing authority in Maine for legal citations, the Uniform Maine Citations, provides no citation for reference to the Maine State Archives Record Retention Schedules. Any future cite within this Order to the personnel records retention schedule will be written as "Me. State Archives Rec. Retention Sched. 4, § 4.2."

may, pursuant to the Patrol CBA and the Command CBA, lawfully remove a written disciplinary document from an officer's personnel file or folder.[4]

## III.  Scope of Removal

The heart of this issue lies in the interpretation of the Patrol and Command CBAs' language regarding removal of reprimands. The City claims, as a matter of law, that if an officer makes a written request for removal of the reprimand from their personnel file, such removal is limited to the personnel file kept within the Police Department and reviewed only when making personnel related decisions such as promotions or terminations. The City says that the CBAs do not require them to remove the reprimands from other, non personnel related files.

The Plaintiffs contend, in their cross motion, that the written request for removal made pursuant to the applicable CBA language requires removal of reprimand letters from all officer associated files stored within City offices — personnel and internal affairs files alike.

Both parties offer ample support for their respective positions. The City cites to analogous cases from other jurisdictions for the proposition that removal of disciplinary records from a personnel file did not require their elimination from all of the city's records. *See Uniformed Fire Officer's Ass'n et. al. v. De Blasio*, 846 F. Appx 25, 30 (2nd Cir. 2021) (holding

---

[4] The City challenges the lawfulness of the CBAs and cites to cases from other jurisdictions which suggest that, when CBAs provide for destruction of public records, they are against public policy. *See City of Chicago v. Fraternal Order of Police, Chicago Lodge No. 7*, 181 N.E. 3d. (Ill. 2020); *Keller v. City of Columbus*, 797 N.E. 2d. 964 (Ohio 2003); *Lieberman v. State Bd. of Labor Relations*, 579 A.2d 505 (Conn. 1990). Because the Court rules in favor of the City, granting their summary judgment motion, the Court does not address this policy based argument.

10

removal of [disciplinary] records from a personnel file, as called for by the CBAs, does not require eliminating them from all of the City's records).

The Plaintiffs cite to a Maine case which holds that a personnel file "includes, but is not limited to, any formal or informal employee evaluations and reports relating to the employee's character, credit, work habits . . . that the employer has in the employer's possession." *Harding v. Wal-Mart Stores Inc.*, 2001 ME 13, ¶ 10, 765 A.2d 73 (quoting 26 M.R.S. § 631 (Supp. 2000)).

After careful consideration of both parties' arguments, the Court concludes, as a matter of law, that the City's interpretation of its obligations under FOAA, and the Patrol/Command CBAs is correct. The City is not required to remove written discipline from all of its officer associated files.

As mentioned *supra* 7-8, the written reprimands are public records and thus are subject to disclosure in response to FOAA requests brought pursuant to 1 M.R.S. § 408-A (2022). Thus, the City must disclose them to Wraight and Hamilton unless some statutory exception prevents their disclosure. The Plaintiffs argue an exception exists in the State Archivist's promulgated retention schedules which allow for CBAs to implement a destruction process for disciplinary records prior to the end of the sixty year retention period.

The Court agrees with the Plaintiffs that the retention schedules offer parties to a CBA the opportunity to craft an exception to retention which calls for the destruction of all disciplinary records, wherever they are located. However, the court disagrees that the exception at issue here has this effect.

11

The CBAs provide for the "removal" of a "written reprimand" from an employee's "personnel folder" one year after its issue, if the "employee notifie[s] the Chief of Police in writing." The use of this specific language in the CBAs, although somewhat ambiguous, is suggestive that the intent behind it was to prevent aging written disciplines from playing a role in later, employment related decisions. Not, as the Plaintiffs would have the Court read it, to prevent their possible disclosure to the public.[5]

In this case, the CBA language — which is lawfully part of each CBA pursuant to the State Archivist's promulgated retention schedules — does not require removal of a written reprimand from all officer associated files at city hall. It merely requires removal, upon written request, of reprimands from personnel folders or files which are stored at the Police Department for reference when making employment related decisions.

This conclusion is reinforced by the legislature's instruction that courts are to construe and apply FOAA's provisions "liberally." 1 M.R.S. § 401 (2022). "A corollary to such liberal construction of [FOAA] is necessarily a strict construction of any exceptions to the required public disclosure." *Citizens Communs. Co. v. Dep't of the AG*, 2007 ME 114, 931 A.2d 503 (quoting *Moffett v. City of Portland*, 400 A.2d 340, 348 (Me. 1979)).

The exception to retention — and subsequent disclosure — of public records, promulgated by the State Archivist in series 4.2 of schedule 4, allows CBA provisions to

---

[5] This intent is supported by former South Portland Police Chief Edward Googins' interpretation of the CBA language. (Googins Aff. ¶¶ 8, 12.)

12

mandate the destruction of disciplinary records. The CBA provisions here call for removal of disciplinary records from a personnel file — not total, complete destruction. Thus, while the CBAs terms implicate the Archivist's exception, they provide for less than all of what the exception offers.

The Plaintiff's cite to *Harding* for support that an internal affairs file is included within the term "personnel folder" or "file" is unpersuasive. While *Harding* did hold that the term "personnel file" was an expansive one which included records "relating to the employee's character . . . [or] work habits," *Harding*, 2001 ME 13, ¶ 13, 765 A.2d 73, such a holding was only in the context of 26 M.R.S. § 631 (Supp. 2000), a statute which governs "an employee's right to review personnel file." Buried in that statute is the following phrase conveniently omitted by the Plaintiffs in their filings: "For the purpose of this section." *Id.* Thus, the legislature intended its expansive definition of the term "personnel file" to apply only in the Section 631 context — this broad definition has little bearing on the decision here.

Accordingly, the Court holds that continued storage of the reprimand in an officer's internal affairs file is appropriate. Such storage, although possible to prevent with certain CBA terms, is not prevented here.

## CONCLUSION

Summary judgment is granted in favor of the City of South Portland. The Temporary Restraining Order granted by this Court on June 18th, 2021, which prevented release of the written reprimands responsive to Wraight's FOAA Request is dissolved. The City may disclose

13

the reprimands in accordance with their decisions to grant Wraight and Hamilton's FOAA requests.

**Entry Is:**

Defendant's Motion for Summary Judgment is GRANTED.

Plaintiff's Cross Motion for Summary Judgment is DENIED.

The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 6/24/22

_____
John O'Neil Jr
Justice, Maine Superior Court

Entered on the Docket: 6/25/22

14